# 13-1383-cv

## United States Court of Appeals
*for the*
## Second Circuit

MATTHEW ROACH, MELISSA LONGO,
GARRETT TICHEN, CHRISTINA APPLE,

*Petitioners,*

– v. –

T.L. CANNON CORP., DBA Applebees, T.L. CANNON MANAGEMENT
CORP., TLC WEST, LLC, TLC CENTRAL, LLC, TLC UTICA, LLC, TLC
EAST, LLC, TLC NORTH, LLC, DAVID A. STEIN, individually and as Owner
and Chairman of T.L. Cannon Corp. and as Director and Chairman of T.L.
Cannon Management Corp., MATTHEW J. FAIRBARN, individually and as
Owner and President of T.L. Cannon Corp. and as Director and Chief Executive
Officer of T.L. Cannon Management Corp., JOHN A. PERRY, individually
and as Vice-President and Director of Operations of T.L. Cannon Corp.
and as President of T.L. Cannon Management Corp.,

*Respondents.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## RESPONDENTS' ANSWER IN OPPOSITION TO PETITION
## TO APPEAL FROM DENIAL OF CLASS CERTIFICATION

CRAIG R. BENSON, ESQ.
LITTLER MENDELSON P.C.
900 Third Avenue
New York, New York 10022
(212) 583-9600

*Attorneys for Respondents*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure, Rule 26.1, Defendant-Appellee T.L. Cannon Corp. states that it is a privately held corporation and that no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................1

II.   QUESTION PRESENTED FOR REVIEW ...................................................2

III.  COUNTER-STATEMENT OF FACTS......................................................2

      A.    Certification Motion and Order ...........................................4

IV.   ARGUMENT.......................................................................................6

      A.    Appellate Review Under Rule 23(f) is Appropriate Only in Extraordinary Circumstances Not Presented Here.............................6

            1.    The Denial of Class Certification Does Not Terminate the Litigation ..........................................................7

            2.    Petitioners Have Not Made a Substantial Showing that the Decision Denying Class Certification is Questionable........8

      B.    Petitioners Fail to Show a Compelling Need for Immediate Resolution..........................................................................13

V.    CONCLUSION.................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alix v. Wal-Mart Stores, Inc.,*
  57 A.D.3d 1044 (3d Dep't 2008)......................................................8

*Arreola v. Godinez,*
  546 F.3d 788(7th Cir. 2008) ........................................................12

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ........................................................12

*Bertulli v. Indep. Ass'n of Continental Pilots,*
  242 F.3d 290 (5th Cir. 2001) ........................................................12

*Chiang v. Veneman,*
  385 F.3d 256 (3d Cir. 2004) ........................................................12

*Comcast Corp. v. Behrend,*
  185 L. Ed. 2d 515 (2013)........................................5, 10, 11, 12, 14

*In re Am. Int'l Grp., Inc. Secs. Litig. v. Gen. Reinsurance Corp,*
  689 F.3d 229 (2d Cir. 2012) ........................................................12

*In re Sumitomo Copper Litigation,*
  262 F.3d 134 (2d Cir. 2001) ............................................6, 7, 13, 14

*Myers v. The Hertz Corp.,*
  624 F.3d 537 (2d Cir. 2010) ..............................................9, 13

*RBS Citizens, N.A. v. Ross,*
  No. 12-165, 2013 U.S. LEXIS 2640 (U.S. Apr. 1, 2013) .....................10, 11, 14

*Ruggles v. Wellpoint, Inc.*
  272 F.R.D. 320 (N.D.N.Y. 2011) ........................................................9

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
  659 F.3d 234 (2d Cir. 2011) ........................................................14

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Tardiff v. Knox Cnty.*,
    365 F.3d 1 (1st Cir. 2004)..................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)....................................................................10

**STATUTES AND RULES**

Fair Labor Standards Act ...........................................................1, 4, 7

Fed. R. Civ. P. 23 ......................................................................passim

Fed. R. Civ. P. 23(b) ........................................................................12

Fed. R. Civ. P. 23(b)(3)...........................................................2, 12, 13

Fed. R. Civ. P. 23(f)...........................................................1, 2, 6, 7, 8

# I.  <u>INTRODUCTION</u>

Petitioners Matthew Roach, Melissa Longo, Garrett Titchen and Christina Apple ("Petitioners" or "Plaintiffs") seek a Rule 23(f)[1] interlocutory appeal from the Decision & Order of Hon. Thomas J. McAvoy ("Decision & Order"), Dkt. No. 114 (Pet. App. 1)[2], denying certification of their New York labor law ("N.Y. Lab. Law") wage claims because they had not met their burden of establishing that questions common to the class predominated over individual issues.

The granting of Rule 23(f) review is rare, and Petitioners' application ("Petition") falls far below the Second Circuit's exacting standards.  Contrary to Petitioners' contention, the denial of class certification does not sound the death knell for Plaintiffs' litigation.  Petitioners individually invoked federal court jurisdiction by asserting claims under the Fair Labor Standards Act ("FLSA") and they can still readily pursue their state law causes of action as supplemental to those pending federal claims.  Nor does the Decision & Order implicate legal questions presenting a compelling need for immediate resolution.  Notwithstanding Petitioners' postulated parade of horribles, the Decision & Order contains no "categorical pronouncement" that the need to calculate damages forecloses a

---

[1]  References to the Federal Rules of Civil Procedure are designated "Rule [number]".

[2]  References to Plaintiffs' Petition to Appeal Class Certification Decision, filed with this Court on April 12, 2013, are designated "Pet. at [page number]".  References to the appendices attached to Plaintiffs' Petition are designated "Pet. App. [number] at [page number]".

showing of predominance in every wage and hour case brought under Rule 23(b)(3).

Rather, following this Circuit's and the Supreme Court's directive to apply a demanding and rigorous analysis to the Rule 23(b)(3) requirements, the District Court properly concluded, based on the evidence submitted by the parties, that the questions of law or fact common to class members did not predominate over questions, including the calculation of damages, affecting only individual members. The District Court's conclusion was well within its discretionary authority to manage and control pending litigation. Petitioners' dissatisfaction with the ruling provides no compelling reason to erode the final judgment rule and the policy values it ensures, including efficiency and deference.

## II.  QUESTION PRESENTED FOR REVIEW

Whether interlocutory review of the District Court's denial of class certification is warranted under Federal Rule of Civil Procedure 23(f) where the denial (1) does not effectively terminate the litigation nor exceed the bounds of reasonable discretion based on the evidence presented by the parties; and (2) does not implicate a legal question about which there is a compelling need for immediate resolution.

## III.  COUNTER-STATEMENT OF FACTS

Petitioners are former restaurant employees who filed a putative class action under New York law for alleged time shaving, alleged unpaid uniform fees,

alleged unpaid laundering fees, and alleged unpaid "spread of hours" payments. Petitioners only raise the time shaving and spread of hours issues before this Court.

As relevant to this Petition, T.L. Cannon Corp. (the "Company" or "Defendants") had a lawful policy to pay eligible employees spread of hours payments under New York law.[3] Petitioners claim, however, that some managers, in some locations, sometimes departed from the Company's procedure to record when spread of hours payments would be due, allegedly resulting in an underpayment.

In addition, the Company had a lawful policy to provide meal breaks to employees as required by applicable New York law, and to properly pay for all time worked. Petitioners claim that some managers, on some occasions, violated Company policy by altering an employee's time to reflect breaks that were not taken.

_____

[3] The relevant time period for purposes of this appeal regarding any spread of hours claim is April 2005 to August 2010, because that is the only time period the Magistrate Judge recommended for certification. *See* Dkt. No. 109 (Pet. App. 2 at 45). Thus, Petitioners' reference to practices before April 2005 is irrelevant. *Id.* at 3-5. Similarly, Petitioners' reference to the Company changing its policy to pay spread of hours payments to employees making minimum wage prior to 2011, *id.* at 4-5, and to all hourly employees after 2011 is also an unnecessary distraction — as that "change in policy" simply reflects a change in the state labor law. *See* Dkt. No. 114 (Pet. App. 1 at 4) (citing an August 24, 2012 Decision & Order in which this Court held "[the spread of hours] regulation applies only to workers compensated at the minimum wage rate" prior to June 2011); *see also* Dkt. No. 98 at 6 (Def. App. 1). References to "Def. App. [number]" refers to Defendants' appendices filed in opposition to the pending petition.

## A.    Certification Motion and Order.

On August 10, 2012, Petitioners filed a renewed motion for collective action FLSA certification and Rule 23 class certification with regard to their N.Y. Lab. Law claims.   Dkt. No. 91 (Def. App. 2).   The motion was referred to Magistrate Judge Peebles, *see* Decision & Order at 2, who, in a Report and Recommendation dated March 5, 2013, recommended that the district court certify a class of employees who "earn[ed] minimum wage between April 2005 and August 2010, and who worked a ten-hour spread but did not receive the additional hour of compensation."   Dkt. No. 109 (Pet. App. 2 at 45).   Other than this limited recommendation for a "spread of hours" class, Magistrate Judge Peebles recommended denial of Plaintiffs' class motion in all other respects. *Id.* The Magistrate Judge recommended denial of class certification on the "time shaving" claim because Petitioners "failed to satisfy the adequacy of representation requirement" since Plaintiffs shaved their own time and that of other hourly employees when acting in managerial capacities.   *Id.* at 40.

By Decision & Order dated March 29, 2013, Hon. Thomas J. McAvoy denied class certification in its entirety.   Dkt. No. 114 (Pet. App. 1).   With respect to the spread of hours claim, the District Judge, relying on the Magistrate Judge's ruling, found:

> Plaintiffs submitted declarations from sixty of defendant[s'] current and present employees claiming not to have been properly compensated for working a ten hour period.   Twenty-one of those declarants, however, are precluded from sustaining a spread of hours claim against defendants either because they earned more than the

4

minimum wage or because they never worked a ten-hour spread. Defendants have countered with sixty-seven declarations from hourly employees, managers, and directors of operations that purport to demonstrate that defendants' policies and practices were in full compliance with New York State's spread of hours regulation.

*Id*. at 5 (internal citations omitted).

Based on the above, the District Judge held:

Due to the Supreme Court's recent holding in *Comcast Corp. v. Behrend*, --- S. Ct. --- which was issued after Magistrate Judge Peebles issued his Report-Recommendation and Order, and for the reasons discussed below, the Court finds that Plaintiffs' have failed to adequately demonstrate that the proposed class for the spread of hours claim ... can be certified under Rule 23.

*Id*. (internal citations omitted).

Specifically, the Court found that:

a demanding and rigorous analysis of the evidentiary proof on this claim does not yield a finding that damages are capable of measurement on a classwide basis. Rather, Plaintiffs' proof that some employees, on various occasions, were denied their 10-hour spread payments indicates that damages in this putative class are in fact highly individualized.

*Id*. at 6. Further the Court held, "[e]ach individual's claim (or claims) would rise or fall on the facts of his or her own case. An adjudication by one individual would not affect the claims by others." *Id*. at 7.

With respect to the "time shaving" claim, the District Court found that Rule 23 certification was properly denied because a demanding and rigorous analysis of the evidentiary proof on this claim indicates that:

damages ... [are] highly individualized [because they are] dependant

[sic] on the circumstances of each individual employee such as whether: [a] each had access to a time clock or had to use the break log [to note breaks taken]; [b] each actually used/sign the break log; and [c] the manager each worked under failed to enter the correct information onto the payroll records.

*Id.* at 9.  The Court again found "[e]ach individual's claim (or claims) would rise or fall on the facts of his or her own case.  An adjudication by one individual would not affect the claims by others."  *Id.* at 10.

Petitioners seek immediate review of Judge McAvoy's Decision & Order denying class certification on the spread of hours and time shaving claims. Defendants request that this Court deny the Petition because Judge McAvoy correctly identified the individual inquiries presented by this particular case making class treatment inappropriate, and because there are no "extraordinary circumstances" present here.

## IV.  <u>ARGUMENT</u>

### A.    **Appellate Review Under Rule 23(f) is Appropriate Only in Extraordinary Circumstances Not Presented Here**

The Second Circuit standards for granting Rule 23(f) review are set forth in *In re Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001).  That seminal decision makes clear that "petitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate either (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates

a legal question about which there is a compelling need for immediate resolution." *Id*. at 139.  However, to "prevent the needless erosion of the final judgment rule and the policy values it ensures, including efficiency and deference," it is anticipated that the standards for granting interlocutory review "will rarely be met."  *Id.* at 140.  Thus, even "a novel legal question will not compel immediate review unless it is of fundamental importance to the development of the law of class actions and is likely to escape effective review after entry of final judgment." *Id.*

As explained below, Petitioners do not, because they cannot, establish any of these rare circumstances justifying the extraordinary interlocutory review they seek under Rule 23(f).  Accordingly, the Petition should be denied.

## 1.    The Denial of Class Certification Does Not Terminate the Litigation.

Petitioners commenced this proceeding as an FLSA opt-in collective action, as well as a Rule 23 class action.  The denial of Rule 23 class certification merely limits the scope of the state law claims to the individually named plaintiffs.  It certainly is not the death knell of the litigation for any of the named plaintiffs (or for any other employee who opts-in under the FLSA).   The show will go on.

Petitioners do not argue to the contrary.   Instead, they speculate in the rankest conclusory fashion that "most plaintiffs," with damages as little as one hour's pay at minimum wage, "will have neither the means nor the will to pursue litigation in federal court" (Pet. at 10).  But Petitioners misuse the word "plaintiffs"

7

– what they mean is putative class members. The plaintiffs in this case are already pursuing their state law claims and have given no indication that they will forgo recovery if they cannot pursue the state law claims on a class-wide basis. Moreover, other individuals are not denied relief by the decision. Employees may, for example, file administrative claims for violations of New York wage law with the New York State Department of Labor. *Alix v. Wal-Mart Stores, Inc.,* 57 A.D.3d 1044, 1045 (3d Dep't 2008) ("The availability of this administrative process, and its focus on the particulars applicable to each employee's claim, make it in many ways a superior method by which the claims made by plaintiffs, and the proposed members of the class, can be pursued.").

> ### 2. Petitioners Have Not Made a Substantial Showing that the Decision Denying Class Certification is Questionable.

Even if the decision on certification did effectively end the litigation, which it does not, a Rule 23(f) appeal would still be unwarranted because the decision was not questionable. Petitioners sought recovery for violations of New York law concerning spread of hours pay and alleged "time shaving" related to rest and meal breaks, alleging that class treatment is appropriate because of alleged ***deviations*** from Defendants' ***lawful*** policies. Thus, to make a ***liability*** determination (not damages – liability), a jury would have to consider ***each*** class member's claims to determine on an individual case-by-case basis (1) if the employee who earned minimum wage ever worked a qualifying ten-hour spread of hours, or experienced

"time shaving;" and (2) if the employee was paid pursuant to lawful company policy.

Petitioners did not allege, or provide the Court with any evidence, that *all* putative class members – hourly employees of Defendants' 54 restaurants – worked enough hours to entitle them to spread of hours pay and that, if they did work the requisite hours, they were not paid for spread pay as required. Petitioners also did not allege that *all* putative class members experienced "time shaving." Defendants, however, established that there was a lawful policy to pay the spread of hours during the time period at issue, and to otherwise pay employees for all hours worked. Defendants also established that employees were, in fact, paid pursuant to lawful policy, and that any failure to pay properly represented a deviation of rogue managers from the lawful policy.

In short, common issues cannot predominate over individual inquiries where both liability and damages must be determined on an individual basis. In other words, there is no basis to conclude that the testimony regarding the experience of any one individual could be imputed to any other putative class member. *Myers v. The Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) (denial of Rule 23 class certification where an individual inquiry was required to determine what duties the employee actually performs); *Ruggles v. Wellpoint*, Inc., 272 F.R.D. 320, 333 (N.D.N.Y. 2011) (same).

The Supreme Court recently confirmed that, to establish class certification under Rule 23, any "common contention[s]" must be "capable of classwide resolution–which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the [putative class members'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Put differently, "[w]hat matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 2551 n.6.   *Dukes* requires "rigorous analysis" of the evidence to determine whether the Rule 23 requirements are satisfied.  *Id*. at 2551.

In *Comcast Corp. v. Behrend*, 185 L. Ed. 2d 515 (2013), the Supreme Court made clear that, when examining whether "questions of law or fact common to class members predominate over any questions affecting only individual members," the "rigorous analysis" requires consideration of all phases of the litigation, including whether the *damages* are susceptible to measurement on a classwide basis.  *Id.* at *521-522.  In other words, proof of damages is a factor in the predominance evaluation.  *Id.*; *RBS Citizens, N.A. v. Ross*, No. 12-165, 2013 U.S. LEXIS 2640 (U.S. Apr. 1, 2013)(remanding wage hour class action case to 7th Circuit for further consideration in light of *Behrend*).  On this record, "individual damage calculations will . . . overwhelm questions common to the

10

class," another obstacle to a finding of predominance. *Behrend*, 185 L. Ed. 2d at 522.[4]

This is precisely the approach taken by the District Court here. Citing *Behrend*, the District Court properly rejected Plaintiffs' "conten[tion] that damages need not be considered for Rule 23 certification even if such damages might be highly individualized." Dkt. No. 114 (Pet. App. 1 at 6). The Court then determined that "damages in *this putative class* are in fact highly individualized" such that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." Dkt. No. 114 (Pet. App. 1 at 6, 7) (emphasis added).

In a transparent effort to create a question where none exists, Petitioners disregard the factual basis for the District Court's conclusion that individual questions predominate over common questions and posit some overarching legal pronouncement forever extinguishing wage hour class actions. Despite what Petitioners would have this Court believe, the District Court addressed only the claims and damages of *this putative class*; it did not "adopt[] a new threshold

---

[4] In finding plaintiffs' established commonality for their spread of hours claim, the Magistrate Judge relied upon *RBS Citizens* for the now vacated principle that a policy applicable to a class of employees is enough to establish a common question of fact or law. Dkt. No. 109 (Pet. App. 2 at 34).

requirement for all Rule 23(b)(3) classes." (Pet. at 13).[5] Petitioners do not dispute

that damages calculations here would be highly individualized, yet they plainly

failed to show that such individualized inquiries were outweighed by anything on

the "common question" side of the scale. *In re Am. Int'l Grp., Inc. Secs. Litig. v.*

*Gen. Reinsurance Corp.*, 689 F.3d 229, 240 (2d Cir. 2012)(explaining that "to

meet the [predominance] requirement, a plaintiff must show that those issues in the

proposed action that are subject to generalized proof outweigh those issues that are

subject to individualized proof.").

   In any event, predominance is a case by case determination best left to the

---

[5] Petitioners make the straw man argument that the District Court inferred that
*Behrend sub silentio* overruled decisions from federal courts of appeals around
the country. (Pet. at 13).  But Petitioners are forced to choose their words
carefully because none of the decisions they cite support their implication that in
a wage claim, damages are immaterial to a Rule 23(b) analysis. *See, e.g.*,
*Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) ("It would be premature
for this court to express an opinion one way or the other on the suitability of
[plaintiff's] case for (b)(3) class treatment.  Our only point here is that the need
for individual damages determinations does not, *in and of itself*, require denial of
his motion for certification") (emphasis added); *Beattie v. CenturyTel, Inc.*, 511
F.3d 554, 564 (6th Cir. 2007)("Lastly, '[c]ommon issues may predominate when
liability can be determined on a class-wide basis, even when there are some
individualized damage issues.'"); *Chiang v. Veneman*, 385 F.3d 256, 273 (3d
Cir. 2004) ("To be sure, there are cases where the question of damages is so
central that it can, in some sense, overtake the question of liability."); *Tardiff v.
Knox Cnty.*, 365 F.3d 1, 6 (1st Cir. 2004) ("[T]he need for individualized
damage decisions does not ordinarily defeat predominance where there are still
disputed common issues as to liability."); *Bertulli v. Indep. Ass'n of Continental
Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) ("Although calculating damages will
require some individualized determinations, it appears that virtually every issue
prior to damages is a common issue.").

discretion of the district court. *Myers*, 624 F.3d at 547 (abuse of discretion standard applies to both "the lower court's ultimate determination on certification" of a class "as well as to its rulings that the individual Rule 23 requirements have been met").

Here, the District Court determined that individual damages issues overwhelmed any common questions on the state labor law claims. Dkt. No. 114 (Pet. App. 1 at 5-7, 9, 10). Accordingly, the District Court was well within the bounds of reasonable discretion when it determined that individual issues predominate such that the case cannot be tried in a one size fits all class action format as required by Rule 23(b)(3).

## B. Petitioners Fail to Show a Compelling Need for Immediate Resolution.

Petitioners make the alternative claim that the decision must be immediately reviewed because the "question presented" in their Petition "implicates a legal question about which there is a compelling need for immediate resolution." *In re Sumitomo Copper Litigation*, 262 F.3d at 139. The fallacy of this contention is patent because the "question presented" by Petitioners is a canard.

As discussed above, the Decision & Order does *not* hold that "the need for an individualized calculation of damages in a wage-and-hour case categorically foreclose[s] a showing of predominance under Rule 23(b)(3)." (Pet. at 2). Rather, the District Court's denial of class certification is premised on its evaluation that, in this particular case, "individual damage calculations will inevitably overwhelm

questions common to the class." Dkt. No. 114 (Pet. App. 1 at 7, 10).    Thus, review of the "question presented" as posed by Petitioners would be a pure advisory opinion having no impact on the outcome of this actual dispute.

The Supreme Court recently confirmed that proof of damages must be considered in a predominance assessment, *see Behrend, RBS Citizens*, and this Court has never held otherwise. *See, e.g., Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011) (upholding finding of commonality where lower court weighed common questions against the possibility of individualized damages, and determining on the facts presented, plaintiffs established predominance).

The District Court's decision was clearly limited to the facts before the Court in this case, and that ruling may be reviewed after a final order.  The District Court did not make any sweeping new legal pronouncement.  Consequently, at this stage, the case does not involve a novel *legal* question that is "of fundamental importance to the development of the law of class actions [and that is] likely to escape effective review after entry of final judgment."  *In re Sumitomo Copper Litigation*, 262 F.3d at 140.[6]

---

[6] Nor does the Second Circuit, as Petitioners imply, require district courts to "utilize any particular verbal formula" or "make express findings" on predominance. *See generally* Pet.  Where, as here, the basis of the ruling "is obvious in context," the Court will not reverse a class certification ruling "simply because the district court has not explicitly recited each finding."  *Shahriar*, 659 F.3d at 251-52.

## V.  **<u>CONCLUSION</u>**

There is no basis for review of the decision to deny class certification of Petitioners' spread of hours and rest period claims.  The Petition to Appeal should be denied.

Dated:  April 22, 2013

/s/ Craig R. Benson
Craig R. Benson
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
*Attorneys for Respondents*

Firmwide:119763978.5 065642.1001

15

# DEFENDANTS-RESPONDENTS' APPENDIX 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW ROACH, MELISSA LONGO,
GARRETT TITCHEN, and CHRISTINA
APPLE,

                              Plaintiffs,

                                                              3:10-CV-0591 (TJM/DEP)

          v.

T.L. CANNON CORP., d/b/a Applebee's,
T.L. CANNON MANAGEMENT CORP.,
TLC WEST, LLC, TLC CENTRAL, LLC,
TLC UTICA, LLC, TLC EAST, LLC, TLC
NORTH, LLC, DAVID A. STEIN, MATTHEW
J. FAIRBAIRN, and JOHN A. PERRY,

                              Defendants.
_____

THOMAS J. McAVOY,
Senior United States District Judge


                         DECISION & ORDER

I.      INTRODUCTION

        The plaintiffs in this action, all former employees of the defendants, have

commenced this action, styled as a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et

seq., and New York State Labor Law collective and class action, against the operators of

approximately fifty-three Applebee's Neighborhood Grill and Bar Restaurants

("Applebee's") throughout New York State. In their complaint Plaintiffs allege the existence

of systemic policies and practices in place at defendants' restaurants resulting in violations

of various provisions of the New York State Labor Law and the FLSA. This action has

1

been preliminarily certified as a collective action for purposes of Plaintiffs' claims under the FLSA, limited to one Applebee's location. The motion for broader FLSA collective action certification, and for Rule 23 class certification with regard to their claims under the New York Labor Law, however, was denied without prejudice.

Defendants have now moved for summary judgment pursuant to Fed. R. Civ. P. 56 seeking judgment in their favor on certain claims pertaining to the named Plaintiffs. See Mot. dkt. # 66. Plaintiffs opposed the motion, dkt. # 72, and Defendants replied. dkt. # 73. Since the submission of the summary judgment motion, Plaintiffs moved for leave to file a second amended complaint, dkt. # 90, and filed a motion for class certification pursuant to Rule 23 and for conditional certification pursuant to the Fair Labor Standards Act. See dkt. # 91. The motion to amend was granted by Magistrate Judge Peebles on the consent of Defendants. See 8/15/12 Text Ord. The Second Amended Complaint does not add new claims, see dkt. # 90-1, p. 1,[1] and the motion for class certification is currently outstanding. See 8/15/12 Text Order (granting parties' request to adjourn motion to the 9/28/12 motion calendar). This Decision and Order will be limited to the arguments presented in the motion addressed to certain claims by the named Plaintiffs.[2]

## II.  BACKGROUND

The majority of the material facts on this motion are not disputed, see Plaintiffs'

---

[1]("The Plaintiff's bring this motion to amend the complaint not to add any new claims, but rather so that the complaint accurately reflects the current status of the claims and classes sought to be certified, as well as to change the relief requested from equitable to monetary relief.").

[2]Plaintiffs' argument that Defendants' motion is premature is without merit. Each of the named Plaintiffs have been deposed, and Plaintiffs have failed to identify any additional information that they hope to obtain that would raise a genuine issue of material fact sufficient to defeat Defendants' present motion, nor have they filed an affidavit stating as much as required by Fed. R. Civ. P. 56(d).

Response to Defendants' Local Rule 7.1(a)(3) Statement, Doc. # 72-2, and such facts will be discussed where relevant below.

## III.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

## IV.    DISCUSSION

### a. Spread of Hours Claims

The first dispute concerns application of New York's former restaurant industry "spread of hours" provision,[3] 12 N.Y.C.R.R. § 137–1.7. See Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 242  n. 4 (2d Cir. 2011).[4]  Section § 137–1.7 appeared in New York's Compilation of Codes, Rules and Regulations in the subpart of Chapter 12 addressed to minimum wages in the restaurant industry.  It provided: "On each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part." 12 N.Y.C.R.R.  § 137–1.7 (2010); see Shahriar, 659 F.3d

---

[3]The spread of hours is the length of the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.

[4]"As of December 29, 2010, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.7 was replaced by N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.6, which also requires employers to pay employees an extra hour's pay at the minimum wage when their workday lasts longer than 10 hours." Shahriar, 659 F.3d at 242 n. 4  None of the named Plaintiffs were employed by Defendants after April 2010.

at 241-42 (Section 137–1.7 "required employers to pay servers an extra hour's pay at the regular minimum wage for each day they work more than ten hours.").

Defendants contend that § 137–1.7 applied only to employees earning at the minimum wage; Plaintiffs contend that § 137–1.7 applied to all non-exempt employees regardless of pay rate. There is no controlling authority on this issue, and case law has varied as to its interpretation of this regulation.

Plaintiffs argue that the Court should follow the reasoning of <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp.2d 327 (S.D.N.Y. 2005), and the cases that have cited <u>Yang</u>. In <u>Yang</u>, the District Court chose not to defer to an April 12, 2006 New York State Department of Labor Opinion Letter that interpreted 12 N.Y.C.R.R. § 142–2.4, an analogous provision to § 137–1.7.[5] The Opinion Letter stated that "the 'spread of hours' regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours worked at the minimum wage plus one additional hour at the minimum wage." NY DOL April 12, 2006 Opinion Letter. The <u>Yang</u> Court, noting that it was not bound by the New York State Department of Labor's interpretation, chose to interpret § 142–2.4 itself and held that the

---

[5] N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4 provides:

**Section 142-2.4. Additional rate for split shift and spread of hours**

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

    (a) the spread of hours exceeds 10 hours; or

    (b) there is a split shift; or

    (c) both situations occur.

N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4.

regulation was applicable to all hourly paid employees regardless of whether they made more than the minimum wage. Yang, 427 F. Supp.2d at 339-40.

As Defendants point out, however,

> a majority of the cases since Yang have disagreed as to both the holding that the plain language of the statute did not limit its applicability to minimum wage workers, Chan v. Triple 8 Palace, Inc., No. 03–CV–6048, 2006 WL 851749, at *21 (S.D.N.Y. March 30, 2006) (holding that because section 142–2.4 explicitly provides for an additional wage only "in addition to the *minimum wage*" required under New York law, "[i]t is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate") (emphasis in original), and the court's decision not to grant deference to the Department of Labor opinion letter, Seenaraine v. Securitas Security Services USA, Inc., 37 A.D.3d 700, 701–02, 830 N.Y.S.2d 728, 729 (2d Dep't 2007) ("[T]he Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language. Thus, it is entitled to deference."). See also Almeida v. Aguinaga, 500 F. Supp.2d 366, 370 (S.D.N.Y. 2007) ("The 'exception' perceived by the Yang court is illusory: no group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law."); Espinosa v. Delgado Travel Agency, No. 05–CV–6917, 2007 WL 656271, at *1–2 (S.D.N.Y. March 2, 2007) ("By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); Jenkins v. Hanac, Inc., 493 F. Supp.2d 556, 558 (E.D.N.Y. 2007)(citing the statutory interpretation in Chan and the rationale for deferring to the Department of Labor from Seenaraine in concurring with the court in Espinosa that "the regulation does not ensure additional compensation to employees whose wages sufficiently exceed the minimum wage floor") (internal quotations and alteration omitted); Franklin v. Breton Int'l, Inc., No. 06–CV–4877, 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006) (holding that New York's " 'spread of hours' provision applies only to workers earning the minimum wage"); but see Cuzco v. Orion Builders, Inc., No. 06–CV–2789, 2010 WL 2143662 (S.D.N.Y. May 26, 2010) (relying solely on Yang without discussion as to the split in holding that "[u]nder the NYLL, if an employee's workday exceeds 10 hours, he must receive one additional hour's pay 'at the basic minimum hourly wage rate'").

Sosnowy v. A. Perri Farms, Inc., 764 F. Supp.2d 457, 473-74 (E.D.N.Y. 2011); see also

Carrasco v. West Village Ritz Corp., Slip Copy, 2012 WL 2814112, at *4, n. 6 (S.D.N.Y. July 11, 2012)("Most courts in this Circuit have ruled that New York's spread of hours provision applies only to employees earning minimum wage . . . ."); Berrios v. Nicholas Zito Racing Stable, Inc., No. CV 04-22, 2012 U.S. Dist. LEXIS 43290 at *43 (E.D.N.Y. March 28, 2012) (holding that limiting spread of hours pay to those employees who earned minimum wage was a correct interpretation of the law in the Second Circuit); Li Ping Fu v. Pop Art Intern. Inc., No. 10 Civ. 8562, 2011 U.S. Dist. LEXIS 113614, 2011 WL 4552436, at *6 (S.D.N.Y. Sept. 19, 2011) ("Most courts in this Circuit have ruled that New York's spread of hours provision applies only to employees earning minimum wage.").

This Court agrees with those cases that have found that New York's former spread of hours regulations applied only to workers earning at the minimum wage.  Section §137-1.7, applicable in this case, explicitly provided that spread of hours pay shall be "in addition to the *minimum wages otherwise required in this Part."* 12 N.Y.C.R.R. § 137–1.7 (emphasis added).  Giving meaning to all terms of the regulation, as the Court must when attempting to interpret the intent of the drafters, see Smith v. Donovan, 878 N.Y.S. 2d 675, 678 (1ˢᵗ Dept. 2009), the "in addition to the minimum wages otherwise required" language indicates that the regulation applied only to those already earning the minimum wage. This conclusion is further buttressed by the fact that §137-1.7 appeared in a subpart of title 12 addressed to minimum wages of restaurant industry employees.

The Court also does not find that the newly enacted spread of hours regulation, 12 N.Y.C.R.R. § 146-1.6, was a clarification of § 137–1.7 (as plaintiffs argue) as opposed to a

change in the law (as defendants argue).  See Shahriar, 659 F.3d at 242  n. 4.[6]

Furthermore, the new regulation explicitly provides that spread of hours pay "shall apply to

*all employees* in restaurants and all-year hotels, *regardless of a given employee's regular*

*rate of pay*," §  146-1.6(d) (emphasis added), thereby indicating that the drafters of the

regulations knew how to apply the spread or hours regulation to all wager earners if that

was their intention.

Therefore, the Court finds that, before January 1, 2011, the spread of hours

regulations were intended to apply only to employees earning at the minimum wage, as

interpreted by the New York States Department of Labor and the cases cited above.

Summary judgment is granted to Defendants dismissing: (a) Plaintiff Titchen's claims for

spread of hours pay for when he worked either as a cook or a key employee;[7] (b) Plaintiff

Roach's claims for spread of hours pay for when he worked as a cook;[8] and (c) Plaintiff

Longo's claims for spread of hours pay for when she worked as a key employee.[9]

### b.  Uniform and Laundering Claims

The next dispute concerns Plaintiffs' claims under the New York Labor Law alleging

---

[6]("As of December 29, 2010, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.7 *was replaced by* N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.6 . . . )(emphasis added).

[7]Titchen worked for Defendants from May 2005 to August 2009, with the exception of a three month period in 2006. (Titchen Dep. 18-19, 20-22). It is undisputed that, with the exception of approximately ten shifts that he worked as a server, Titchen worked either as a cook or a key employee and earned in excess of minimum wage. (Titchen Dep. 48).

[8]Roach was hired by Defendants on May 5, 2005 as a cook and, during the five year period that Roach worked for Defendants, he worked in a variety of positions. (Roach Dep. 81).  It is undisputed that Roach always earned in excess of minimum wage working as a cook.

[9]Longo worked for Defendants from April 2005-January 2009 in a number of different positions, including server, bartender, and key employee. (Longo Dep. 14, 16).  It is undisputed that Longo always earned in excess of minimum wage when she worked as a key employee.

Defendants' failure to reimburse them for the costs of purchasing and laundering the apparel they are required to wear to work. The parties dispute whether most of the apparel constituted parts of a uniform for which the employer was obligated to reimburse purchase and laundering costs; whether the applicable regulations applied only to employees earning minimum wage; and whether Plaintiffs are entitled to any compensation.

The undisputed evidence indicates that the named Plaintiffs worked in various positions for Defendants, with none working past March of 2010. In all the positions they held, Plaintiffs were required to wear black, nonslip shoes that each Plaintiff purchased from various footwear retail stores or outlets. In certain positions during certain periods of time, some Plaintiffs were required to wear shirts and baseball style caps that had the Applebee's logo. At other times, Plaintiffs were required to wear black pants, black shirts, jeans, khaki pants, and/or plain, non-descriptive t-shirts and baseball caps. Except for the Applebee's logo shirts and hats, Plaintiffs purchased their work clothing at various retail stores, and some already owned some items before starting work at Applebee's. See Apple Dep.;[10] Roach Dep.;[11] Longo Dep.;[12] Titchen Dep.[13] All four Plaintiffs washed their

---

[10]Apple wore a black button-down shirt, black slacks, black non-slip shoes, and a belt to work. (Apple Dep. 156). These items could be purchased at any store of her choosing. (Apple Dep. 152). In Apple's case, she obtained her shirts and slacks from Target (Apple Dep. 156) and her shoes from a vendor called Shoes For Crews. (Apple Dep. 157).

[11]Roach worked in a variety of positions during the five year (2005-2010) period that he worked for Defendants. His dress code evolved from 2005-2010, and varied according to position. In 2005, when he worked as a cook, Roach wore a t-shirt and cap (both with an Applebee's logo), chef pants, and black, non-slip shoes. (Roach Dep. 134-135). According to Roach, he already owned his chef pants and first pair of black shoes when he started working for Defendants (Roach Dep. 135-136), and he was provided with two t-shirts and a cap at no cost when he was hired. (Roach Dep. 132-134). Roach never paid for another t-shirt or cap. (Roach Dep. 141-142). As of the Fall of 2006, Roach primarily worked as a server and a bartender. In these positions, Roach wore a polo shirt with an Applebee's logo and an apron, which were provided free of

(continued...)

8

work clothes at home, using regular laundry detergent. None of the Plaintiffs have

submitted evidence of the costs of purchasing or laundering their work clothes.

Defendants assert that they are entitled to an Order dismissing the claims because:

(1) black, nonslip shoes are not a uniform as a matter of law; (2) the various apparel items

within Defendants' dress code (black pants, black shirts, jeans, khaki pants, and plain,

non-descriptive t-shirts and baseball caps) all may be worn as a part of an employee's

"ordinary wardrobe" and are not a uniform as a matter of law; (3) even if Plaintiffs' work

clothes are found to be "uniforms," Plaintiffs' have proffered no evidence that their wages

were reduced below minimum wage as a result of the purchase or laundering of their work

---

[11](...continued)
charge, along with black pants, a black belt, black socks, and black non-slip shoes. (Roach Dep. 137-139). According to Roach, he never paid for a polo shirt or apron. (Roach Dep. 141-142). At some point in 2007, the dress code changed and when Roach worked as a server or bartender, he wore a black, button-up shirt with the same black pants, belt, shoes, and socks that he wore previously. (Roach Dep. 149). Roach could obtain the items he wore to work from any place and chose to obtain his shirts from mainstream stores like Bon Ton and T.J. Maxx, and his shoes from a store named ECCO. (Roach Dep. 144-145).

[12]According to Longo, she worked for Defendants from April 2004 to January 2009 (Defendants' payroll records indicate that she was actually employed from April 2005 to January 2010) in a number of different positions, primarily as a server, bartender, and key hourly employee. Longo testified that when she started working for Defendants, she was given two polo shirts with an Applebee's logo, one server apron, and one hat with an Applebee's logo, at no cost. (Longo Dep. 36). When she worked as a server, Longo wore this polo shirt with khaki pants and black shoes. (Longo Dep. 36, 53). Longo obtained her khaki pants from Target (Longo Dep. 47) and her shoes from Payless and Shoes For Crews. (Longo Dep. 48-49). When she worked as a bartender, Longo wore the polo shirt with an Applebee's logo with black pants which she purchased from Kohl's. (Longo Dep. 47-48). According to Longo, the dress code changed in 2006. (Longo Dep. 51-52). At that point she wore a black top, black pants, black socks, and black shoes to work. (Longo Dep. 52). Longo purchased her black tops from Kohls or Macys. (Longo Dep. 53-54).

[13]With the exception of approximately ten shifts that he worked as a server, Titchen worked either as a cook or a key employee for Defendants from May 2005 to August 2009. (Titchen Dep. 18-19, 20-22, 47-48). Titchen's dress code evolved throughout his employment. In 2005, when Titchen was first hired, he was given two t-shirts and a cap with an Applebee's logo. (Titchen Dep. 50-51). He wore the t-shirt and cap with blue jeans or khakis. (Titchen Dep. 54). According to Titchen, when he needed more caps and kitchen t-shirts, he simply took them from the storage closet in his restaurant. (Titchen Dep. 52). Titchen never paid for any of these items. (Titchen Dep. 52). According to Titchen, the dress code changed in late 2007 to early 2008, and he wore whatever cap he wanted when he worked as a cook. (Titchen Dep. 61-62). When he worked as a key employee, Titchen wore khaki pants and a polo shirt with an Applebee's logo that he had previously taken. (Titchen Dep. 63). Titchen wore pants that he already owned to work, (Titchen Dep. 65), although he contends that he also purchased pants for work purposes.

clothes; and (4) Plaintiffs Apple, Titchen, and Roach never purchased a shirt with an Applebee's logo, and therefore, lack standing to bring a claim to recover for the purchase of these shirts.

### 1. Purchase and Laundering of Required Uniforms

"Prior to January 1, 2011, New York law provided that 'No allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the minimum wage.'" Flores v. Anjost Corp., 2012 WL 2339267, at *4 (S.D.N.Y. June 19, 2012)(quoting 12 N.Y.C.R.R. § 137–1.8 (2010)).[14] "If an employee's uniform costs reduce his pay below the statutory minimum wage, the employee is entitled to recover the cost of the uniform items for which he paid and a statutory uniform maintenance allowance for all weeks in which the employer did not provide such maintenance." Garcia v. La Revise Associates LLC, 2011 WL 135009, at *6 (S.D.N.Y. Jan.13, 2011)(citing 12 N.Y.C.R.R. § 137–1.8); see also Ayres v. 127 Restaurant Corp., 12 F. Supp.2d 305, 310 (S.D.N.Y. 1998)("New York law . . . require[d] employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage.").

Under applicable New York law, a "required uniform" is

clothing worn by an employee, at the request of an employer, while performing job-related duties or to comply with any State, city or local law, rule or regulation. It does not, however, include clothing that may be worn as part of an employee's ordinary wardrobe.

12 N.Y.C.R.R. § 137–3.13.

---

[14]Since January 1, 2011, the law requires that employers pay for their employees' required uniforms "regardless of a given employee's rate of pay." 12 N.Y.C.R.R. §§ 146–1.7, 146–1.8.

Thus, ordinary wardrobe items that can be worn as a part of non-work apparel do not qualify as uniform as a matter of law. See Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc., 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010)(Granting summary judgment because "[p]laintiff waiters were required to wear a white shirt, black pants, a tie, and a red vest. The only item that arguably could not have been worn as part of the employee's ordinary wardrobe, the red vest, was provided by defendants."); Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp.2d 706, 712 (S.D.N.Y. 2007) (holding that black leather shoes, white-button down shirts, black dress pants, and black socks did not qualify as a "uniform" in accordance with N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13); but see Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp.2d 253, 293 (S.D.N.Y. 2011)(finding that it was a question of fact whether apparel constituted a uniform where restaurant captains were required to wear suits of a "shiny, Liberace style", and where busboys were required to wear black aprons and vests, the "particular brand and style" of which were "dictated" by the employer); Ramirez v. CSJ & Co., 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007) ("Although I am sorely tempted, given current dress norms, to hold that a blue T-shirt bearing a deli's name and logo is 'clothing that may be worn as part of an employee's ordinary wardrobe,' the question probably is better decided by a trier of fact than as a matter of law."); Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *22 (S.D.N.Y. Feb. 1, 2007)("The uniforms that plaintiffs and other employees wear at 88 Palace, consisting of either suits or jackets, and pants, shirts, and ties of specific colors, constitute 'required' uniforms."); Ayres, 12 F. Supp.2d at 310 ("On this record, a reasonable juror could conclude that Le Madri's required outfit constituted a uniform. Although most of the articles of clothing at issue arguably 'may be worn as part of an

employee's ordinary wardrobe' and no specific brands are mandated, specific colors are required (black shoes and socks and white shirts)....").[15]

### 2. Shirts With Applebee's Logo

"Defendants acknowledge, for purposes of this motion only, that the issue of whether a shirt with an Applebee's logo satisfies the statutory definition of a uniform may present a question of fact. Therefore, Defendants do not move for summary judgment at this time on whether shirts with a company logo are a uniform." Def. MOL, p. 12. However, Plaintiffs failed to address Defendants' argument that Apple, Roach, and Titchen lack standing to pursue claims for the purchase price of a shirt with an Applebee's logo because they never purchased such shirts. Based on the evidence presented, and Plaintiffs' failure to respond to this argument, summary judgment is granted dismissing Apple, Roach, and Titchen's claims for reimbursement for the costs of purchasing shirts with an Applebee's logo.

A question of fact exists, however, on whether Apple, Roach, Longo, and Titchen's wages were reduced below the minimum wage by the costs of laundering Applebee's

---

[15]Ayres interpreted the employer-mandated wardrobe claim under New York Labor Law and the FLSA, Ayres, 12 F. Supp.2d at 310, writing:

> Although the term "uniform" is not expressly defined under federal law, the U.S. Department of Labor has suggested certain guiding principles:
>
> > If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress the garments chosen would not be considered to be uniforms.... On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g., where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms.
>
> (DOL's Wage & Hour Field Operations Handbook § 30c12(f)).

Id. As is apparent, the federal law is more encompassing as to what constitutes a uniform.

shirts when they worked as servers or bartenders and were paid the minimum wage with a

tip credit. See Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *22

(S.D.N.Y. Feb. 1, 2007)("Because, at all relevant times, plaintiffs were paid wages of no

more than the New York minimum wage with a tip credit, their uniform expenses

necessarily decreased their wages below minimum wage.... Accordingly, plaintiffs are

entitled to recover from defendants (1) the cost of those uniform items for which they paid;

[and] (2) the full statutory weekly uniform maintenance allowance for all weeks that the

defendants did not offer any laundry service ...").  Although Defendants contend that

clothes washing machines were available at the restaurants, Plaintiffs assert that the

washing machines were not available for personal use by employees.  Even though

Plaintiffs could not produce receipts for the cost of their laundering, a reasonable

inference could be drawn that there was some cost associated therewith and that Plaintiffs

had no alternative but to launder their clothes at home.  Thus, the motion is denied as to

the laundering costs of Applebee's shirts.

### 3.  Other Apparel Items

The Court next turns to the claims for purchase and laundering costs of the other

items of work apparel.  The descriptions of the other clothing items that the employer

required Plaintiffs to wear in their various positions indicate, from an objective perspective,

that the items are within the category of clothes "that may be worn as part of an

employee's ordinary wardrobe."  There is no evidence that the employer imposed any

stylistic requirements of the garments other than color, or, in the case of caps and t-shirts,

that they be non-descriptive.  Further, the employees purchased their wardrobe items at

various footwear and clothing retailers open to the general public, leading to the

13

conclusion that the items were of the nature that an objectively reasonable person would wear outside of a restaurant employment situation. While each Plaintiff might have subjectively determined not to wear the clothing outside of working hours, the New York regulation is not drafted from a subjective perspective. Thus, the non-Applebee's logo employer-required clothing items do not constitute a "uniform" within the meaning of N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13. Accordingly, summary judgment is granted dismissing Plaintiffs' claims for the purchase and laundering costs of black, non-slip shoes; black pants; black shirts; jeans; khaki pants; plain, non-descriptive t-shirts; and plain, non-descriptive baseball-style caps.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. # 66] is **GRANTED IN PART and DENIED IN PART**. The motion is granted inasmuch as the following claims are **DISMISSED**:

(a) Plaintiff Titchen's claims for spread of hours pay for when he worked either as a cook or a key employee;

(b) Plaintiff Roach's claims for spread of hours pay for when he worked as a cook;

(c) Plaintiff Longo's claims for spread of hours pay for when she worked as a key employee;

(d) Plaintiffs Apple, Roach, and Titchen's claims for reimbursement for the costs of purchasing shirts with an Applebee's logo;

(e) Plaintiffs Apple, Roach, Longo, and Titchen's claims for the purchase and laundering costs of black, non-slip shoes; black pants; black shirts; jeans; khaki pants; plain, non-descriptive t-shirts; and plain, non-descriptive baseball-style caps.

The motion is denied in all other respects.

14

**IT IS SO ORDERED**

**Dated:** August 24, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

# DEFENDANTS-RESPONDENTS' APPENDIX 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

MATTHEW ROACH, MELISSA LONGO,
GARRETT TITCHEN and CHRISTINA APPLE

*Plaintiffs*,

v.

T.L. CANNON CORP., d/b/a APPLEBEES, T.L.
CANNON MANAGEMENT CORP., TLC WEST,
LLC, TLC CENTRAL, LLC, TLC UTICA, LLC, TLC
EAST, LLC, and TLC NORTH, LLC; DAVID A.
STEIN, individually and as Owner and Chairman of
T.L. Cannon Corp. and as Director and Chairman of
T.L. Cannon Management Corp.; MATTHEW J.
FAIRBAIRN, individually and as Owner and
President of T.L. Cannon Corp. and as Director and
Chief Executive Officer of T.L. Cannon Management
Corp.; and JOHN A.PERRY, individually and as Vice-
President and Director of Operations of T.L. Cannon
Corp. and as President of T.L. Cannon Management
Corp.,

*Defendants*.

CIVIL CASE NO.:
3:10-cv-00591-TJM-DEP

NOTICE OF MOTION FOR
CLASS CERTIFICATION AND
CONDITIONAL CERTIFICATION

**PLEASE TAKE NOTICE** that, upon (1) the Declaration of Annette Gifford, dated

August 10, 2012, with its attached exhibits, including the Declaration of Frank S. Gattuso, dated

August 9, 2012, with its attached exhibits; and (2) plaintiffs' Memorandum of Law in Support of

Motion for Class Certification and Conditional Certification, plaintiffs, by their attorneys,

O'Hara, O'Connell, & Ciotoli and Thomas & Solomon LLP, will move this Court, on September

10, 2012, or as soon thereafter as counsel may be heard, before the Honorable Thomas J.

McAvoy, United States District Judge, in the James T. Foley U.S. Courthouse, 445 Broadway,

Albany, New York, for an Order pursuant to Fed. R. Civ. P. 23 granting plaintiffs class

certification of their claims under the New York Labor Law and conditional certification and

pursuant to § 216(b) of the Fair Labor Standards Act granting plaintiffs conditional certification of their claims under that statute.

**PLEASE TAKE FURTHER NOTICE**, that in accordance with Local Rule 7.1(b) for the United States District Court for the Northern District of New York, plaintiffs intend to file and serve reply papers, and defendants are required to file and serve opposing papers at least seventeen (17) days prior to the return date.

Dated: August 10, 2010

**THOMAS & SOLOMON LLP**

By:     /s/ Annette Gifford
        J. Nelson Thomas, Esq.
        Michael J. Lingle, Esq.
        Annette Gifford, Esq.
        693 East Avenue
        Rochester, New York 14607
        Telephone:  (585) 272-0540
        nthomas@theemploymentattorneys.com
        mlingle@theemploymentattorneys.com
        agifford@theemploymentattorneys.com

        O'HARA, O'CONNELL, & CIOLTOLI
        7207 East Genesee Street
        Fayetteville, New York 13066
        Telephone: (315) 451-3810

        *Attorneys for Plaintiffs*